Cynthia L. Martin, Judge
In these consolidated appeals, K.H. ("Mother") and R.S. ("Father") appeal judgments terminating their parental rights to K.S. ("Daughter") and A.S. ("Son") (collectively "Children"). Mother and Father each challenge whether a statutory basis existed to terminate their parental rights, and whether the evidence supported finding that termination was in the best interest of the Children. Finding no reversible error, we affirm.
Factual and Procedural Background[1]
Mother and Father are the biological parents of Daughter (born September 19, 2012) and Son (born August 9, 2014). The Children were placed in protective custody in April 2015 after Father assaulted *402 Mother while the Children were present, giving Mother two black eyes, causing scratches on her arms and back, and causing hair to be missing from Mother's head. The Children's Division imposed a safety plan which Mother and Father failed to follow. As a result, on May 7, 2015, the Clay County Juvenile Court took jurisdiction of the Children and placed the Children in the care, custody, and control of the Children's Division. Both Mother and Father reported that there had been other incidents of domestic violence in the home.
On May 12, 2015, Father was convicted of the class A misdemeanor of assault in the third degree based on the violence inflicted on Mother in early April 2015. Father was sentenced to 180 days in the Clay County Detention Center, with execution of his sentence suspended subject to satisfactory completion of a two-year term of probation.
On August 17, 2015, Father was arrested for the class C felony of assault in the second degree following his June 18, 2015 assault of a man who was Mother's landlord. Father remained in custody after his arrest, and pled guilty on October 25, 2015. He was then sentenced to four years' imprisonment. As a result of this criminal conviction, Father's probation was revoked in yet another case where Father had been convicted of the class B felony of first degree burglary. As a result, Father was sentenced to ten years' imprisonment. Father has a conditional release date in August 2023, and became eligible for parole consideration in May 2018.
Services Provided to Mother
Between the court's assumption of jurisdiction of the Children and the initiation of termination of parental rights proceedings, Mother has had eight written service agreements with the Children's Division. Among other things, the service agreements afforded Mother with the right to supervised visits with her Children. During the first year that the Children were in the care, custody, and control of the Children's Division, Mother's visits with the Children were inconsistent and sporadic. Mother failed on numerous occasions during this time frame to confirm future visits with the Children's Division. Mother would, on occasion, call to confirm a planned visit, then fail to show up for the visit. On several occasions, the Children's Division worker would attempt to contact Mother to facilitate a visit, but Mother would not answer her phone.
In May 2016, after a year of inconsistent and sporadic visits, the Children's Division changed Mother's planned weekly visits to planned bi-weekly visits. After Mother's planned visits were changed to twice a month, Mother never attended any other planned visits with her Children.
Mother was incarcerated in October 2016. She was released, and was not incarcerated between December 2016 and May 2017. Mother made no effort to see her Children during this time, though she was not incarcerated. Mother was incarcerated again in late May 2017 following her conviction for tampering with a motor vehicle. She was sentenced to four years' imprisonment.
Throughout the time that the Children have been in the care, custody, and control of the Children's Division, Mother was homeless or staying with friends. Mother was not employed. Mother failed to provide urinary analyses required by her written service agreements. Although the Children's Division attempted to assist Mother in obtaining mental health treatment, housing, drug treatment, and information on domestic violence shelters, Mother did not follow through with any of the recommended services. The Children's Division advised at trial that Mother had not completed any of the goals in her several *403 written service agreements, and that Mother had shown a lack of commitment to, and disinterest in, the welfare of her Children.
Services Provided to Father
Between the court's assumption of jurisdiction of the Children and the initiation of termination of parental rights proceedings, Father has had multiple written service agreements with the Children's Division. During the majority of this same time frame, Father was either in jail or incarcerated.
During the brief time when Father was not in jail or incarcerated, (between May 12, 2015 and August 17, 2015), Father had two written service agreements that imposed three goals: (1) to participate with the Children's Division in the case; (2) to maintain a safe and stable environment; and (3) to address mental health concerns. Each goal required various tasks, including supervised visitation with the Children. Though Father participated in four or five one-hour visits with the Children during the period when he was not in custody, he was directed by the written service agreements to visit with the Children weekly, but did not do so. Father admits in his Brief that beyond his limited visits with the Children, he did not meet the tasks or goals set forth in these written service agreements.
After Father was incarcerated on August 17, 2015, he was subject to several additional written service agreements. The first, which covered the period from September 10, 2015 to December 10, 2015, set various goals with related tasks. Father admits in his Brief that "[t]he evidence is not clear as to whether [Father] complied with any tasks or completed any goals" described in this written service agreement.
Beginning January 1, 2016 and ending June 29, 2017, and while Father was incarcerated, Father signed six additional written service agreements with nearly identical terms. These written service agreements required Father to perform tasks directed at three goals, summarized as follows:
Goal 1: To continue to nurture the bond with the Children by:
1. Maintaining monthly contact with the Children's Division worker to discuss the case and the Children; and
2. Maintaining a relationship with the Children by written communication, through the case worker, and with contact visits as allowed.
Goal 2: To gain knowledge on nurturing, child development, and discipline by:
1. Agreeing to locate and participate in services that would benefit him as a parent;
2. Agreeing to check out parenting books and to submit written reports to the Children's Division about what he learned from the books;
3. Agreeing to participate in any offered parenting classes, and to provide certification of having done so; and
4. Agreeing to sign all releases of information.
Goal 3: To address his mental health by:
1. Agreeing to locate and complete a domestic violence assessment;
2. Agreeing to locate and complete a mental health assessment;
3. Agreeing to locate and complete an anger management assessment;
4. Agreeing to locate and complete a drug assessment; and
5. Agreeing to complete random urinary analyses as requested by the Children's Division or Juvenile Office within 24 hours.
*404 Father contends that he complied with the written service agreements in place between January 1, 2016 and June 29, 2017. The Children's Division contends that Father did not sufficiently comply with the terms of these written service agreements.
Petitions to Terminate Parental Rights
The Clay County Juvenile Officer filed separate petitions to terminate Mother's and Father's parental rights to Daughter and Son on June 9, 2017. The petitions are identical except for their references to Daughter or Son, as appropriate.
With respect to Mother, the petitions did not identify the statutory provisions on which the Juvenile Officer was relying to seek the termination of Mother's parental rights. However, it is plain from the factual allegations in the petitions that the Juvenile Officer was relying on section 211.447.5(1)[2] and section 211.447.5(3), addressing, respectively, abandonment of the Children and the failure to rectify conditions that led to the assumption of jurisdiction.
With respect to Father, the petitions did not identify the statutory provisions on which the Juvenile Officer was relying to seek the termination of Father's parental rights. However, it is plain from the factual allegations in the petitions that the Juvenile Officer was relying on section 211.447.5(3) and section 211.447.5(6), addressing, respectively, the failure to rectify conditions that led to the assumption of jurisdiction, and being unfit to be a party to the parent and child relationship.
Judgments Terminating Mother's and Father's Parental Rights
Following a trial where both Mother and Father testified despite being incarcerated, and where both Mother and Father were represented by counsel, the trial court entered two judgments on November 16, 2017, one of which terminated parental rights as to Daughter, and the other of which terminated parental rights as to Son. The judgments ("Judgments") are identical except for their respective references to Daughter or Son.
With respect to Mother, the Judgments found that Mother had abandoned the Children in that without good cause, she "withheld love, care, protection and presence from the [Children], left the [Children] without any provisions for parental support and without making arrangements to visit or communicate with the [Children], although able to do so, ... for a period in excess of six months prior to the filing of [the petitions]," in that Mother "has not visited the [Children], communicated with the [Children] or sent support for the [Children] since May, 2016." The Judgments found that the conditions of criminal activity and abandonment that had given rise to the assumption of jurisdiction would likely continue in the future with little likelihood that the conditions would be remedied at an early date so that the Children could be returned to Mother in the near future. The Judgments found that continuation of the mother-child relationship would greatly diminish the Children's prospects for early integration into a stable and permanent home. The Judgments found that Mother had, by her own deliberate acts, diminished her ability to have a relationship with the Children as she failed to visit regularly before she was incarcerated; failed to write the Children regularly while in prison; and claimed in a manner deemed by the court to be not credible that she could not afford the 61 cents it would cost to write her Children each month. The Judgments found that Mother had shown a lack of commitment *405 to, and disinterest in, the welfare of the Children, and that based on these facts and Mother's repeated criminal activity, "there is little likelihood additional services would bring about a lasting parental adjustment enabling a return of the [Children] to the parent within an ascertainable period of time."
As was the case with the petitions filed by the Juvenile Officer, the Judgments did not identify the statutory provision or provisions relied on by the court to terminate Mother's parental rights. However, the findings and conclusions in the Judgments mirror language found in section 211.447.5(1) (abandonment) and section 211.447.5(3) (failure to rectify conditions giving rise to the assumption of jurisdiction).
With respect to Father, the Judgments found that the "[c]onditions which led to the assumption of jurisdiction are of a potentially harmful nature to the [Children], including but not limited to, [Father's] continued use of assaultive behavior, which on more than one occasion has led to his incarceration, his inability to provide the [Children] with a safe and stable home and [his failure] to cooperate with or benefit from the services designed to rectify the conditions." The Judgments found that Father's assaultive behavior, criminal activity, and failure to provide a safe and stable home for the Children were likely to continue in the future with little likelihood, based in part on Father's incarceration, of being remedied at an early date so that the Children could be returned to Father in the near future. The Judgments found that continuation of the father-child relationship would greatly diminish the Children's prospects for early integration into a stable and permanent home. The Judgments found that despite diligent and repeated efforts by the Children's Division to aid Father in participating in domestic violence classes and therapy, as well as to provide or direct other services, Father "has been unable or unwilling to benefit from the services or to sufficiently comply with the terms of the various written service agreements." The Judgments found that by his own deliberate acts, Father had diminished his ability to have a relationship with the Children, and had shown a lack of commitment to, and disinterest in, the welfare of the Children, such that there was little likelihood additional services would bring about a lasting parental adjustment enabling return of the Children to Father within an ascertainable period of time.
The Judgments referred to section 211.447.4 (3), but made findings drawn from the language of section 211.447.5(3) (failure to rectify conditions giving rise to the assumption of jurisdiction). The Judgments also included findings which correlate to the statutory factors a trial court is required to consider in connection with section 211.447.5(3). Despite the mistaken reference to section 211.447.4 (3), it is apparent the trial court relied on section 211.447.5(3) as the statutory basis to terminate Father's parental rights. The Judgments did not expressly refer to section 211.447.5(6).
The Judgments found as to both Mother and Father that termination of all parental rights in and to the Children would be in the best interest of the Children. Neither Mother nor Father filed post-trial motions pursuant to Rule 78.07(c) alleging any deficiencies in the Judgments. Mother and Father timely appealed from the Judgments, and their appeals were consolidated by this Court.
Standard of Review
"This Court reviews whether clear, cogent, and convincing evidence was presented to support a statutory ground *406 for terminating parental rights under Murphy v. Carron , 536 S.W.2d 30 (Mo. banc 1976)." In re J.P.B. , 509 S.W.3d 84, 90 (Mo. banc 2017) (quoting J.A.R. v. D.G.R. , 426 S.W.3d 624, 626 (Mo. banc 2014) ). "Therefore, the trial court's judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. The judgment will be reversed only if we are left with a firm belief that the order is wrong." Id. (quoting J.A.R. , 426 S.W.3d at 626 ). "In reviewing termination of parental rights cases, like all types of bench-tried cases, this Court is mindful 'that circuit courts are better positioned to determine witness credibility and weigh evidence in the context of the whole record than an appellate court.' " Id. at 89-90 (quoting J.A.R. , 426 S.W.3d at 626 ).
"After this Court determines that one or more statutory ground has been proven by clear, convincing, and cogent evidence, this Court must ask whether termination of parental rights was in the best interest of the child." Id. at 90 (quoting J.A.R. , 426 S.W.3d at 626 ). "At the trial level, the standard of proof for this best interest inquiry is a preponderance of the evidence; on appeal, the standard of review is abuse of discretion." Id. (quoting J.A.R. , 426 S.W.3d at 626 ). "An abuse of discretion occurs only when the trial court's ruling is clearly against the logic of the circumstances and [is] so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration." In re A.C.G. , 499 S.W.3d 340, 344 (Mo. App. W.D. 2016) (quoting In re S.Y.B.G. , 443 S.W.3d 56, 59 (Mo. App. E.D. 2014) ).
Mother's Appeal
Mother raises two points on appeal. First, she claims it was error to find that she abandoned the Children because abandonment must be voluntary, and her incarceration in the six months immediately preceding the filing of the petitions to terminate her parental rights was not voluntary abandonment. Second, she claims that the trial court abused its discretion to find that termination was in the best interest of the Children because the trial court failed to consider the emotional ties between Mother and the Children, and mistakenly considered evidence regarding Mother's contact with the Children, her commitment to the Children, and whether the Children could be returned to her within an ascertainable period of time. For the reasons herein explained, neither point has merit.
Mother's first point on appeal addresses the termination of her parental rights pursuant to section 211.447.5(1) based on a finding of abandonment. However, Mother does not challenge the findings in the Judgments which support termination of her parental rights pursuant to section 211.447.5(3) based on her failure to rectify harmful conditions. That, alone, is arguably fatal to Mother's appeal. "When the trial court finds multiple statutory grounds for termination of parental rights, in order to affirm the judgment this Court need only find that one of the statutory bases was proven and that the termination was in the best interests of the child." In re A.G.B. , 530 S.W.3d 7, 14 (Mo. App. W.D. 2017) (quoting In re T.R.W. , 317 S.W.3d 167, 170 (Mo. App. S.D. 2010) ).
We recognize that the Judgments do not expressly identify the sections of Chapter 211 relied on by the trial court to terminate Mother's parental rights. However, as we have noted, the Judgments include findings drawn from the language of sections 211.447.5(1) and 211.447.5(3), causing us to question Mother's failure to challenge each alternative basis relied on *407 by the trial court to terminate her parental rights.[3]
Even if we excuse Mother's failure to challenge the termination of her parental rights pursuant to section 211.447.5(3), we would nonetheless find her challenge to termination of her parental rights pursuant to section 211.447.5(1) to be without merit.
Mother claims she could not have been found to have abandoned the Children pursuant to section 211.447.5(1) as a matter of law. Mother argues that in the six months immediately preceding the filing of the petitions for termination of her parental rights, she was incarcerated and thus could not have voluntarily or intentionally abandoned the Children. Mother's argument misconstrues section 211.447.5(1) which provides, in pertinent part, that parental rights may be terminated with respect of a child over one year of age at the time of filing the petition if the child is found to be abandoned because:
[F]or a period of six months or longer : ... (b) The parent has, without good cause, left the child without any provision for parental support and without making arrangements to visit or communicate with the child, although able to do so.
(Emphasis added). The plain language of this statute does not require the referenced six-month period to immediately precede the filing of the petition seeking to terminate parental rights. See G.E.R. v. B.R. , 441 S.W.3d 190, 196 (Mo. App. W.D. 2014) (holding that "the issue of abandonment is largely focused on the parent's intent, in which evidence can be considered from before and after the six-month statutory period"). And, the plain language of the statute provides that the failure to visit or communicate without good cause can support a finding of abandonment.
Here, though Mother was incarcerated for the majority of the six-month period immediately preceding June 6, 2017, the date on which the petitions to terminate her parental rights were filed, Mother did not visit with the Children at all after May 2016, though she was permitted to do so bi-weekly pursuant to her written service agreements. Mother offers no excuse for her failure to visit with the Children between May 2016 and her incarcerations in October 2016 and again in May 2017.
Even were we constrained to consider Mother's contact with her Children during the six months immediately preceding the filing of the petitions seeking termination of her parental rights, Mother's abandonment of the Children during that period was not involuntary. Though incarceration impacted Mother's ability to have in-person contact with the Children, the Judgments found that that Mother failed to otherwise communicate with the Children. Mother "failed to write the [Children] regularly while in prison" without good cause, as the trial court rejected as not credible *408 Mother's claim that she could not afford 61 cents per month to do so.
The trial court did not err in finding that Mother abandoned her Children in the manner described in section 211.447.5(1), and thus did not err in finding that Mother's termination of parental rights on that basis was supported by clear, cogent, and convincing evidence. Mother's first point on appeal is denied.
Mother's second point complains that the trial court abused its discretion in finding that termination of her parental rights was in the best interest of the Children. She complains that the trial court did not consider best interest factors enumerated by section 211.447.7, namely the emotional ties between Mother and the Children. And she claims that the trial court incorrectly considered evidence about other factors enumerated by section 211.447.7, namely her contact with the Children, her commitment to the Children, and whether the Children could be returned to her within an ascertainable period of time.
Section 211.447.7 provides, in relevant part, as follows:
When considering whether to terminate the parent-child relationship pursuant to ... subdivision (1), (2), (3) or (4) of subsection 5 of this section, the court shall evaluate and make findings on the following factors, when appropriate and applicable to the case:
(1) The emotional ties to the birth parent;
(2) The extent to which the parent has maintained regular visitation or other contact with the child;
(3) The extent of payment by the parent for the cost of care and maintenance of the child when financially able to do so including the time that the child is in the custody of the division or other child-placing agency;
(4) Whether additional services would be likely to bring about lasting parental adjustment enabling a return of the child to the parent within an ascertainable period of time;
(5) The parent's disinterest in or lack of commitment to the child;
(6) The conviction of the parent of a felony offense that the court finds is of such a nature that the child will be deprived of a stable home for a period of years; provided, however, that incarceration in and of itself shall not be grounds for termination of parental rights;
(7) Deliberate acts of the parent or acts of another of which the parent knew or should have known that subjects the child to a substantial risk of physical or mental harm.
Mother claims the trial court erroneously failed to consider (that is, to make any finding regarding) the first factor-her emotional ties with the Children. Mother's claim is not preserved for appellate review. Mother did not file a Rule 78.07(c) motion after the entry of the Judgments challenging the trial court's failure to make statutorily required findings. Under Rule 78.07(c), "allegations of error relating to the form or language of [a] judgment, including the failure to make statutorily required findings, must be raised in a motion to amend the judgment in order to be preserved for appellate review." See In re E.B.R. v. E.R. , 503 S.W.3d 277, 286 n.9 (Mo. App. W.D. 2016) (holding that "[a]lthough a trial court's failure to make statutorily required best interest findings is considered error, such error 'is not preserved unless a motion [pursuant to Rule 78.07(c) ] is filed ... specifically challeng[ing] the failure to make statutorily mandated findings' ") (alteration in original) (quoting K.L.A. v. Aldridge , 241 S.W.3d 458, 462 (Mo. App. W.D. 2007) (addressing section 452.375.6, an analogous *409 statute requiring best interest findings) ); In re C.K. , 221 S.W.3d 467, 469-70 (Mo. App. W.D. 2007) (holding that Rule 78.07(c) motion is required to preserve claim of error based on alleged failure to make statutorily required findings pursuant to section 211.447); In re K.M.C., III , 223 S.W.3d 916, 926-27 (Mo. App. S.D. 2007) (holding that Rule 78.07(c) motion is required to preserve claim of error based on alleged failure to make statutory best interest findings required by section 211.447).
Mother next complains that the trial court incorrectly considered evidence involving three of the best interest factors: her contact with the Children, her commitment to the Children, and whether the Children could be returned to her within an ascertainable period of time. Mother does not contend that no evidence supports the trial court's unfavorable findings on these three factors, and instead urges us to reweigh the evidence to favor contrary evidence. Mother's argument ignores our standard of review. "When the evidence poses two reasonable but different inferences, this Court is obligated to defer to the trial court's assessment of the evidence." In re J.P.B. , 509 S.W.3d at 90 (quoting J.A.R. , 426 S.W.3d at 626 ). "In reviewing questions of fact, the reviewing court is to recognize that the circuit court is free to disbelieve any, all, or none of the evidence, and it is not the reviewing court's role to re-evaluate the evidence through its own perspective." Id. (quoting J.A.R. , 426 S.W.3d at 627 ).
Mother's second point on appeal is denied.
Father's Appeal
Father raises two points on appeal. First, Father alleges that there was no substantial evidence to establish the third element for termination under section 211.447.5(3). Second, Father alleges that no substantial evidence supported the factors found adverse to him relevant to the finding that termination of his parental rights was in the best interest of the Children. For the reasons herein explained, neither claim has merit.
With respect to Father's first point on appeal, grounds to terminate parental rights pursuant to section 211.447.5(3) exist when the following three elements are present:
(1) "[t]he child has been under the jurisdiction of the juvenile court for a period of one year;" (2) "the conditions which led to the assumption of jurisdiction still persist, or conditions of a potentially harmful nature continue to exist;" and (3) "there is little likelihood that those conditions will be remedied at an early date so that the child can be returned to the parent in the near future, or the continuation of the parent-child relationship greatly diminishes the child's prospects for early integration into a stable and permanent home."
In re J.P.B. , 509 S.W.3d at 90 (quoting section 211.447.5(3) ). Father does not challenge the sufficiency of the evidence to establish the first two elements, and contends only that no substantial evidence established the third element. Specifically, Father contends that no substantial evidence supported the trial court's findings that Father had not sufficiently progressed or complied with his written service agreements, that Father's assaultive behavior will likely continue in the future, or that Father's incarceration rendered him unable to appropriately care for the Children for the foreseeable future.
To prevail on a no substantial evidence challenge, Father must demonstrate "that there is no evidence in the record tending to prove a fact that is necessary to *410 sustain the [trial] court's judgment as a matter of law." Ivie v. Smith , 439 S.W.3d 189, 200 (Mo. banc 2014). Father cannot sustain this burden.
The Children's Division assumed jurisdiction over the Children because of Father's assaultive behavior, and because Father could not provide a safe and stable home. Based on Father's history of assaultive behavior, including domestic violence, the Children's Division and Father established written service agreements wherein Father agreed to complete a domestic violence assessment, a mental health assessment, and an anger management assessment. Father completely failed to comply with his written service agreements while he was not incarcerated, except for four or five visits with the Children. Even then, Father missed more weekly visits with the Children than he attended while he was not incarcerated. When he was incarcerated, Father participated in a variety of classes and regularly contacted the Children, but Father continued to fail in obtaining the required assessments of his domestic violence, mental health, or anger management issues. Although Father completed a victim impact class, his description of the class did not indicate that it included a domestic violence assessment or that it addressed domestic violence issues. And while Father testified he was on a waiting list for anger management classes, it had been over two years since Father first agreed to complete an anger management assessment. Further, there is no indication that Father ever completed or pursued a mental health assessment.
Father's total failure to comply with his service agreements while he was not in custody, and his failure to complete the assessments set forth in the agreements while he was incarcerated, support the trial court's finding that Father failed to sufficiently progress or comply with his written service agreements. Father's history of assaultive behavior, coupled with Father's failure to comply with the provisions of written service agreements pertaining to mental health, anger management, and domestic violence, constitutes substantial evidence that the conditions which led to the assumption of jurisdiction of the Children will not be remedied at an early date as to permit the Children to be returned to Father in the near future.
The trial court's finding in this regard is only bolstered by the fact that Father is incarcerated, and may remain so until 2023. See In re J.P.B. , 509 S.W.3d at 92-93. Father concedes as much in his Brief. Though Father argues that he could be earlier released on parole, early release from incarceration would not alter the fact that Father failed to comply with critical provisions of written service agreements designed to address his history of assaultive behavior and his inability to afford the Children a safe and stable home.
Substantial evidence clearly, cogently, and convincingly supports the trial court's finding that there is little likelihood that Father's assaultive behavior, and his inability to provide a safe and stable home, will be remedied at an early date as to permit the Children to be returned to Father in the near future. The trial court did not err in terminating Father's parental rights pursuant to section 211.447.5(3) on this basis.
Father's second point on appeal argues that no substantial evidence supported the trial court's adverse findings relating to the best interest factors set forth in section 211.447.7. Father's point relied on also alleges that the trial court failed to make adequate findings with respect to all of the factors described in section 211.447.7.
*411 The latter allegation is not preserved for appellate review. Father did not file a Rule 78.07(c) motion challenging the trial court's failure to make statutorily required best interest findings. In re E.B.R. , 503 S.W.3d at 286 n.9. That aspect of Father's second point on appeal is denied.
We also reject Father's argument that the trial court's adverse best interest findings were not supported by substantial evidence. Father challenges the trial court's finding that, based on Father's deliberate acts, it was unlikely that additional services would bring about lasting parental adjustment to enable the Children to be returned to Father within an ascertainable period of time. See section 211.447.7(4). Father also challenges the trial court's finding that Father had shown a lack of commitment to the Children and a disinterest in their welfare. See section 211.447.7(5).
Father cannot demonstrate that these best interest findings are supported by no evidence. To the contrary, these best interest findings are supported by Father's history of assaultive behavior, including domestic violence committed while the Children were present, and his failure to make progress in addressing his behavior despite the specific goals set out in multiple written service agreements.
The trial court did not abuse its discretion in finding that termination of Father's parental rights was in the best interest of the Children. Father's second point on appeal is denied.
Conclusion
The trial court's Judgments are affirmed.
All concur

On appeal from a judgment terminating parental rights, we view the facts in the light most favorable to the judgment. In re A.C.G. , 499 S.W.3d 340, 343 n.1 (Mo. App. W.D. 2016).

All statutory references are to RSMo 2016 as supplemented unless otherwise indicated.

The trial court's Judgments are not models of clarity. Not only do they fail to expressly identify the statutory bases for termination of parental rights, they fail to include any findings regarding the factors described in section 211.447.5(3) as potentially relevant to determining whether to terminate parental rights pursuant to that section. Best practice and fundamental fairness dictate that a judgment terminating parental rights should identify the statutory basis for doing so by express statutory citation. However, Mother has not challenged the Judgments in this regard. And, if Mother wished to challenge the clarity of the Judgments or the lack of statutorily required findings, it would have been incumbent on her to file a motion to amend the Judgments. "In all cases, allegations of error relating to the form or language of the judgment, including the failure to make statutorily required findings, must be raised in a motion to amend the judgment in order to be preserved for appellate review." Rule 78.07(c).